PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.                                              No. 07-4270

LARRY PAULEY,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(2:04-cr-00150)

Argued: December 5, 2007

Decided: December 28, 2007

Before WILLIAMS, Chief Judge, MOTZ, Circuit Judge,
and HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Chief Judge Williams and Judge Motz joined.

## COUNSEL

**ARGUED:** Robert Booth Goodwin, II, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellant. Benjamin Lee Bailey, BAILEY & GLASSER, L.L.P., Charleston, West Virginia, for Appellee. **ON BRIEF:** Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellant. Eric B. Snyder, Deirdre H. Purdy, BAILEY & GLASSER, L.L.P., Charleston, West Virginia, for Appellee.

## OPINION

HAMILTON, Senior Circuit Judge:

Larry Pauley pled guilty to one count of possessing photographs that contained images of child pornography, 18 U.S.C. § 2252A(a)(5)(B). At sentencing, the district court determined that Pauley's Guidelines range was 78 to 97 months' imprisonment. After considering this range in conjunction with the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Pauley to forty-two months' imprisonment. Finding no abuse of discretion, we affirm the sentence imposed by the district court.

I

Pauley was an art teacher at Hayes Junior High School in St. Albans, West Virginia from August 1971 until he moved to a similar position at St. Albans High School in September 2003. While he was teaching at Hayes Junior High School in the 2002-2003 school year, Pauley was approached by a female eighth-grade student (the victim) who asked whether he was interested in paying her money if she took nude photographs of herself. Pauley agreed to the victim's proposal and, thereafter, the victim, using a Polaroid camera she owned, took nude photographs of herself and sold them to Pauley. A similar transaction was proposed by the victim and consummated by the parties later in the 2002-2003 school year.

For the 2003-2004 school year, both Pauley and the victim were at St. Albans High School. In September 2003, the victim approached Pauley and asked if he was interested in paying her money to take more nude photographs of herself. Pauley responded in the affirmative. Consequently, Pauley purchased more nude photographs of the victim during that month.

Some time before October 1, 2003, the victim approached Pauley with a proposal of a different kind. This time, the victim asked Pauley if he was interested in paying the victim and her friend, who was also a student at St. Albans High School, to take nude photographs of themselves together. Pauley told the victim that he was willing to pay both the victim and her friend for such photographs.

On October 1, 2003, Pauley gave the victim his Polaroid camera and some film, and the victim placed these items in her school locker. Later that day, the victim's friend reported to school personnel that Pauley was willing to pay her and the victim money to take nude photographs of themselves together. An investigation by school personnel and the St. Albans Police Department ensued. During a search of the victim's locker, school personnel discovered the camera and the film Pauley had given the victim. After the execution of a search warrant at Pauley's home, police officers recovered the photographs that the victim took of herself. Seventeen of the twenty-five photographs taken were determined to contain images of child pornography. None of the photographs included the face of the victim.

On August 10, 2004, the government filed a one-count information charging Pauley with possessing photographs that contained images of child pornography, *id.* § 2252A(a)(5)(B). On September 13, 2004, pursuant to a written agreement with the government, Pauley pled guilty.

In preparation for sentencing, a presentence report (PSR) was prepared by the probation office. Using the November 2003 edition of the United States Sentencing Commission's *Guidelines Manual* (USSG), the probation officer calculated Pauley's Guidelines range as follows. For his offense, Pauley's base offense level was 15, USSG § 2G2.4(a). However, because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, the probation officer applied the Sexual Exploitation of a Minor Guideline, USSG § 2G2.1, *see* USSG § 2G2.4(c)(1) (providing for cross-reference to USSG § 2G2.1), which resulted in an offense level of 27. The probation officer added two more levels because the photographs involved a victim who had attained the age of twelve years but had not attained the age of sixteen years, USSG § 2G2.1(b)(1)(B). Because the victim, as a student at St. Albans High School, was arguably within Pauley's supervisory control, the probation officer increased Pauley's offense level by two levels pursuant to USSG § 2G2.1(b)(2). The probation officer also increased the offense level by two levels because, in the probation officer's view, the victim was vulnerable under USSG § 3A1.l(b)(1). After giving Pauley a three level reduction for acceptance of responsibility, USSG § 3E1.1, the probation officer calculated Pauley's

offense level to be 30. This offense level, coupled with a criminal history category of I, produced a recommended Guidelines range of 97 to 121 months' imprisonment.

At sentencing, the district court sustained Pauley's objection to the vulnerable victim enhancement. This reduced Pauley's Guidelines range to 78 to 97 months' imprisonment. After allowing the parties to present arguments as to what they believed the appropriate sentence should be, the district court considered the Guidelines range and § 3553(a) factors, ultimately concluding that the circumstances of the case warranted a downward variance to a sentence of forty-two months' imprisonment. According to the district court, the extent of the downward variance was supported by the following facts as they related to the § 3553(a) factors: (1) in buying the nude photographs each time, Pauley initially was approached by the victim with such a proposal; (2) fewer than two dozen pornographic photographs were taken with the victim's Polaroid camera; (3) the victim's face did not appear in any of the photographs; (4) Pauley displayed deep remorse; (5) besides the criminal conduct at issue, Pauley was a model citizen and a good father and teacher; (6) as a result of his conviction, Pauley lost his teaching certificate and his state pension; (7) Pauley agreed to a lifetime of supervised release; (8) no other child pornography was found in Pauley's house; and (9) the counseling Pauley would receive during incarceration would rehabilitate him, allow him to lead a productive life upon release, and make further crimes by Pauley extremely unlikely.

II

On appeal, the government contends that the sentence imposed by the district court is unreasonable. More specifically, the government contends that the district court did not offer compelling reasons justifying the substantial variance from the advisory Guidelines range of 78 to 97 months' imprisonment. Alternatively, the government claims that the sentence must be vacated because the district court placed excessive weight on one of the § 3553(a) factors.

A

Before the enactment of the Sentencing Reform Act of 1984 (SRA), *as amended*, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*,

a sentencing court enjoyed wide discretion in imposing a criminal sentence. *Mistretta v. United States*, 488 U.S. 361, 363 (1989). Because the vast majority of federal criminal statutes have only a maximum term of years (and a maximum monetary fine), a sentencing court was permitted to impose any term of imprisonment and any fine up to the statutory maximums. Given this wide discretion, the sentencing court's "determination as to what sentence was appropriate met with virtually unconditional deference on appeal." *Id.* at 364. Consequently, there was little, if any, appellate review of the sentence imposed by the sentencing court. *Cf. Dorszynski v. United States*, 418 U.S. 424, 431 (1974) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.").

The passage of the SRA radically changed the sentencing landscape. The SRA created the United States Sentencing Commission and authorized the Sentencing Commission to establish and implement sentencing policies for the federal criminal justice system. *See* 28 U.S.C. § 991(a) (establishing the Sentencing Commission "as an independent commission in the judicial branch of the United States"); *id.* § 991(b)(1) (noting that one of the purposes of the Sentencing Commission is to "establish sentencing policies and practices for the Federal criminal justice system"). At Congress' direction, the Sentencing Commission developed the Sentencing Guidelines to reduce judicial discretion, thereby creating more uniformity in sentences of similarly situated offenders. *See id.* § 994(a)(1) (directing Sentencing Commission to promulgate Sentencing Guidelines); *see also United States v. Booker*, 543 U.S. 220, 253 (2005) (noting that "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"). Thus, the purposes of the Guidelines are to "provide direction as to the appropriate type of punishment-probation, fine, or term of imprisonment-and the extent of the punishment imposed." *Stinson v. United States*, 508 U.S. 36, 41 (1993).

Application of the Sentencing Guidelines by the sentencing court involves a multi-step process through which the sentencing court assesses the seriousness of a defendant's current offense and past crimes to establish an offense level and a criminal history score, which then are used to determine the defendant's applicable sentenc-

ing range from a box grid called the "Sentencing Table." USSG Sentencing Table. A host of factors are used to determine a defendant's offense level and criminal history score, thus requiring the sentencing court to make detailed findings of facts supporting any enhancements or reductions to a defendant's offense level, any adjustments to a defendant's criminal history score, or any departure above or below the Guidelines range.

Prior to the Supreme Court's decision in *Booker*, the Sentencing Guidelines were mandatory and binding on all sentencing and appellate courts. *Booker*, 543 U.S. at 233-34. In *Booker*, the Court held that the mandatory nature of the Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee of a right to a jury trial. *Id.* at 232-36. In so doing, the Court reaffirmed the holding of *Apprendi v. New Jersey* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244 (reaffirming the holding of *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

To remedy the Sixth Amendment violation, the *Booker* Court did not strike down all of the provisions of the SRA relating to the Guidelines; rather, the Court excised the two provisions of the SRA which made the Guidelines mandatory on sentencing and appellate courts. *Id.* at 258-63 (severing and excising the two provisions, 18 U.S.C. § 3553(b)(1) and 18 U.S.C. § 3742(e), that made the Guidelines mandatory but leaving the rest of the Guidelines intact). Thus, *Booker* rendered the Sentencing Guidelines advisory, but the Court stressed in that case that a sentencing court still must take the Guidelines into account at sentencing along with the factors set forth in § 3553(a). *Booker*, 543 U.S. at 264.* The *Booker* Court also instructed appellate

(Text continued on page 8)

---

*Under § 3553(a), a sentencing court must consider

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such Guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable Guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such Guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

courts to review a sentencing decision for reasonableness. *Id.* at 260-62. According to the Court, reasonableness review served "to iron out sentencing differences." *Id.* at 263.

Recently, the Supreme Court decided two cases which together explain in detail the mechanics of *Booker*'s remedial holding. *See Gall v. United States*, No. 06-7949, 2007 WL 4292116 (U.S. December 10, 2007); *Kimbrough v. United States*, No. 06-6330, 2007 WL 4292040 (U.S. December 10, 2007). In *Gall*, the Court instructed that the sentencing court should first calculate the applicable Guidelines range. 2007 WL 4292116, at *7. This starting point furthers Congress' desire for efficient administration and nationwide consistency in sentencing. *Id.* After calculating the Guidelines range, the sentencing court must give both the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate." *Gall*, 2007 WL 4292116, at *7. The sentencing court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by either party. *Id.*; *see also Kimbrough*, 2007 WL 4292040, at *10 (noting that, while § 3553(a) requires the sentencing court to give due consideration to the Guidelines, *Booker* allows the sentencing court to fashion the sentence in light of other statutory considerations). In so doing, the sentencing court may not presume that the Guidelines range is reasonable. *Gall*, 2007 WL 4292116, at *7. In the event the sentencing court decides to impose a variance sentence, *i.e.*, one outside of the recommended Guidelines range, the sentencing court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* As noted by the *Gall* Court, it is an "uncontroversial" proposition that a "major departure should be supported by a more significant justification than a minor one." *Id.*

---

      (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Our appellate review of the reasonableness of a sentence focuses on whether the sentencing court abused its discretion in imposing the chosen sentence. *Id.* This abuse of discretion standard of review involves two steps, the first examines the sentence for significant procedural errors, the second looks at the substance of the sentence. The Court in *Gall* explained that "significant" procedural errors include errors such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Gall*, 2007 WL 4292116, at *7.

Substantive reasonableness review entails taking into account the "totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* If the sentence is within the Guidelines range, we, as an appellate court, may, but are not required to, presume that the sentence is reasonable. *Id.* However, if the sentence is outside the Guidelines range, we are prohibited from applying a presumption of unreasonableness. *Id.* To hold otherwise would fatally undermine the Court's holding in *Booker*. *Id.* at *6. In reviewing the substantive reasonableness of the sentence, we may consider "the extent of the deviation," but we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 2007 WL 4292116, at *7. Even if we would have reached a different sentencing result on our own, this fact alone is "insufficient to justify reversal of the district court." *Id.*

B

Turning to our review of Pauley's sentence, we initially note that there are no procedural errors. The parties agree that the district court correctly calculated the Guidelines range to be 78 to 97 months' imprisonment. After calculating the Guidelines range, the district court allowed both Pauley and the government to argue what should be the appropriate sentence. After such argument, the district court carefully considered the § 3553(a) factors to determine whether they supported a variance sentence. In so doing, the district court did not presume that the Guidelines range was reasonable. Moreover, the district court thoroughly explained its reasoning supporting the variance

sentence. In short, there being no procedural errors, we must determine whether the district court abused its discretion in determining that the § 3553(a) factors supported a forty-two month sentence and justified a thirty-six month deviation from the Guidelines range. *Gall*, 2007 WL 4292116, at *10.

The district court's rationale for varying downward thirty-six months from the low-end of Pauley's Guidelines range is reasonable and premised on the factors set forth in § 3553(a). In its ruling, the district court emphasized that certain facts related to the nature and circumstances of Pauley's offense were mitigating. Certainly, the district court acted within its discretion when it concluded that Pauley was less culpable than an individual who approaches a minor victim and asks her to take nude photographs of herself. Moreover, the district court was at liberty to find Pauley less culpable because the victim's face did not appear in any of the photographs. If her face had so appeared, she could have been subjected to more serious harm, especially if the photographs wound up in the public domain. Along a similar vein, the low number of pornographic photographs taken and the fact that the Polaroid photos were not readily transmittable over the Internet certainly are two additional mitigating facts that the district court in the exercise of its discretion was allowed to consider in varying downward from the Guidelines range.

The district court also reasonably concluded that other factors tied to the nature and circumstances of Pauley's offense were mitigating. The district court was at liberty to find as a mitigating factor that no other child pornography was found in Pauley's house. The lack of other child pornography in Pauley's possession demonstrated that he was not as culpable, say as an individual who possesses photographic images of numerous individuals.

In its consideration of the § 3553(a) factors, the district court correctly found in the exercise of its discretion that other facts warranted a sentence lower than that recommended by the Guidelines range. The district court found that Pauley warranted a lower sentence because he was deeply remorseful and, besides the criminal conduct at issue, he was a good father and teacher. Such considerations were appropriate because they are directly tied to § 3553(a)(1)'s directive that the court consider the history and characteristics of the defendant. 18

U.S.C. § 3553(a)(1). The district court also found that Pauley warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct. Consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for "just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B). The district court further explained that a lower sentence would allow Pauley to be rehabilitated through the counseling he will receive during incarceration, and the court noted that a lifetime of supervised release would reduce the risk of Pauley becoming a repeat offender and would deter him from future criminal conduct. These are also valid considerations under § 3553(a). In sum, considering all of the factors that the district court viewed as mitigating in their totality, we hold that the thirty-six month downward variance was supported by the justifications necessary to uphold the sentence.

C

In its brief, which was filed before the Supreme Court's decisions in *Gall* and *Kimbrough*, the government argues that, under our decisions in *United States v. Khan*, 461 F.3d 477 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 2428 (2007), and *United States v. Moreland*, 437 F.3d 424 (4th Cir.), *cert. denied*, 126 S. Ct. 2054 (2006), Pauley's sentence must be vacated because the district court was not permitted to vary from the Guidelines range unless compelling reasons existed to justify the substantial variance from the Guidelines range. According to the government, no such compelling reasons are present. In a related argument, relying on our decision in *United States v. Green*, 436 F.3d 449 (4th Cir.), *cert. denied*, 126 S. Ct. 2309 (2006), the government argues that Pauley's sentence must be vacated because the district court placed excessive weight on Pauley's history and characteristics. *See id.* at 457 ("[T]he overarching standard of review for unreasonableness will not depend on whether we agree with the particular sentence selected, . . . but whether the sentence was selected pursuant to a reasoned process in accordance with law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law."). We reject both of these arguments.

With regard to the former argument, the government reads too much into our decision in *Khan*. In *Moreland*, we stated that the "far-

ther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *Moreland*, 437 F.3d at 434. This statement is consistent with *Gall*'s requirement that, if the district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 2007 WL 4292116 at *2. Moreover, to the extent that our language in *Khan* is inconsistent with *Gall*, *see Kahn*, 461 F.3d at 500 ("under the principles outlined in *Moreland*, the district court must present compelling reasons for the variance"), we obviously are bound by *Gall*. *See Gall*, 2007 WL 4292116, at *2-6 (rejecting the Eighth Circuit's rule that a sentence that constitutes a substantial variance from the Guidelines range must be justified by extraordinary circumstances).

As to the government's argument that, under *Green*, Pauley's sentence must be vacated because the sentencing court placed excessive weight on one of the § 3553(a) factors, its argument is misplaced. Contrary to the government's suggestion, the district court in this case did not place excessive weight on any one factor in § 3553(a). Rather, the district court cautiously considered all of the relevant § 3553(a) factors in imposing a reasonable sentence. Moreover, to the extent that our language in *Green* suggests that a court cannot reasonably accord significant weight to a single sentencing factor in fashioning its sentence, *Gall* and *Kimbrough* hold otherwise. In *Gall*, the Supreme Court held it "quite reasonabl[e]" for the sentencing court to have "attached great weight" to a single factor, in that case "self-motivated rehabilitation." *Gall*, 2007 WL 4292116, at *12; *see also Kimbrough*, 2007 WL 4292040, at *10 (holding that an appellate court should not find the sentencing court's reliance on a single factor unreasonable, so long as the court imposes a sentence "sufficient, but not greater than necessary to accomplish the sentencing goals advanced in § 3553") (internal quotation marks omitted).

### III

For these reasons, Pauley's sentence is affirmed.

*AFFIRMED*