**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 06-4995**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID H. HUMPHREY,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Northern District of West Virginia, at Elkins.  Robert E. Maxwell, Senior District Judge.  (2:04-cr-00025-REM)

─────────────

Argued:  December 7, 2007          Decided:  April 15, 2008

─────────────

Before DUNCAN, Circuit Judge, HAMILTON, Senior Circuit Judge, and Catherine C. BLAKE, United States District Judge for the District of Maryland, sitting by designation.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

**ARGUED:** L. Richard Walker, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant.  Stephen Donald Warner, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Elkins, West Virginia, for Appellee.  **ON BRIEF:** Sharon L. Potter, United States Attorney, Wheeling, West Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

David Humphrey pled guilty to one count of being a felon in possession of a firearm. At sentencing, the district court determined that Humphrey's advisory Sentencing Guidelines range was 46-57 months' imprisonment. After considering this range together with the factors set forth in 18 U.S.C. § 3553(a), however, the district court sentenced Humphrey to 91 months in prison. For the reasons articulated below we find no abuse of discretion under applicable law and therefore affirm the sentence imposed by the district court.

I

Humphrey, who had little income and no regular employment, lived by himself in an improvised home in an isolated mountainous area outside the small town of Parsons, West Virginia. His criminal record included a 1985 felony conviction for growing marijuana, which it appears he cultivated for his personal use and for self-medication of his mental health problems. Humphrey also had accumulated a number of convictions for marijuana possession, assault, shoplifting, stalking, and driving on a suspended license. On the other hand, he also had done such services as shoveling snow and sweeping sidewalks in the town of Parsons, and on one occasion had assisted in saving a woman from a flood. Despite the 1985 felony conviction, and perhaps not understanding he was prohibited

from doing so, Humphrey possessed rifles and a shotgun for hunting in the woods where he lived.

Humphrey apparently had a difficult relationship with certain local law enforcement officers who, he believed, were harassing him. On May 7, 2004, Humphrey began to drive down the dirt road from his home toward the road that led into town. Though his license was suspended at the time, Humphrey apparently had been told by a local prosecutor that he could drive on the dirt road so long as he did not get on the main highway. While still on the dirt road, however, he was confronted by a state trooper intending to cite him for driving an improperly registered vehicle. Refusing to obey the officer, Humphrey drove back toward his shack. When the trooper followed, Humphrey retrieved a shotgun, which he pointed at the trooper while threatening to kill him. Humphrey subsequently obtained a second weapon and, when the trooper decided to back his vehicle away from the shack, Humphrey got back in his truck and, gun in hand, chased the trooper as he backed down the road. The encounter lasted approximately 20 minutes and was captured on the trooper's in-car video camera. No actual shots were fired by either Humphrey or the trooper, and Humphrey was arrested when back-up arrived. He was prosecuted in state court for wanton endangerment, pled guilty on July 28, 2005, and was sentenced to a year in prison.

Humphrey also was prosecuted by federal authorities, based on the 1985 felony. On October 19, 2004 he was charged in a two-count indictment for violations of 18 U.S.C. § 922(g)(1), possession of two rifles and a shotgun following a felony conviction, and 18 U.S.C. § 922(g)(3), possession of the same firearms by an unlawful user of marijuana. On June 23, 2005, he pled guilty to count one before Senior Judge Robert E. Maxwell, and a presentence report was ordered. Counsel appointed to represent Humphrey, observing his history of mental health problems, obtained an evaluation by psychologist Dr. William Fremouw. At a sentencing hearing scheduled for October 13, 2005, the court determined that an additional evaluation should be done within the Bureau of Prisons pursuant to 18 U.S.C. §§ 4241 and 4244. Based on the report received from the Federal Medical Center at Butner, North Carolina, the court determined without objection that Humphrey was competent at the time of his guilty plea and could proceed with sentencing, then scheduled for May 8, 2006. Prior to sentencing, however, the court advised counsel of its intention to depart upward from the Sentencing Guidelines range, in large part because of the report

from Butner.[1]   A continuance of the sentencing was granted until September 11, 2006.

At sentencing the court calculated the Guidelines as reflected in the presentence report, without objection, as follows: a base offense of 14; an increase of 2 because three firearms were possessed; an increase of 4 because a firearm was possessed in connection with another felony offense (wanton endangerment); and a decrease of three levels for acceptance of responsibility. Together with Humphrey's criminal history category of V, the adjusted offense level of 17 resulted in a range of 46-57 months' incarceration.

Humphrey's counsel, arguing for a downward departure under USSG § 5K2.13 for diminished capacity or for a variance below the

---

[1]The court's order identified the basis of the potential upward "departure" as:

> several of those factors set forth in 18 U.S.C. § 3553(a), namely the nature and circumstances of the offense; the history and characteristics of the Defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence imposed to promote respect for the law; the need for the sentence imposed to provide just punishment for the offense; the need for the sentence imposed to afford adequate deterrence to criminal conduct; the need for the sentence imposed to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and, perhaps most importantly in this case, the need for the sentence imposed to protect the public from further crimes of the Defendant.

J.A. 19.

Guidelines, presented the testimony of Dr. Fremouw concerning his evaluation of Humphrey and his review of the Butner report.[2] Like Butner, Dr. Fremouw diagnosed Humphrey as having a major depressive order, cannabis dependence, and schizo-typal personality. Like the Butner report, Dr. Fremouw identified Humphrey as at-risk for suicide, noting that in the course of the incident Humphrey not only threatened the trooper but also told the trooper "go ahead and shoot me." J.A. 48. Dr. Fremouw described the May 7, 2004 incident as the "one incident of violence" in Humphrey's 53 years, stating that Humphrey's quick temper ordinarily was expressed verbally rather than by violent behavior. J.A. 55. He agreed that whether the violent behavior might happen again was a "very serious question," although "the likelihood [would] decrease substantially if he is in treatment." J.A. 57. While testifying on direct examination that there were no "red flags" in the Butner report, on cross-examination he agreed that the reference to monitoring for possible future homicide risk, as well as suicide risk, was such a red flag. J.A. 65.

The government, while challenging the request for a downward departure or variance, nonetheless maintained the position taken in

---

[2]In his sentencing memorandum, defense counsel also argued for a departure under USSG § 4A1.3 on the ground that Category V substantially overrepresented the seriousness of Humphrey's criminal history. J.A. 159-60.

its plea agreement that a sentence at the low end of the guideline range would be sufficient.

The district judge rejected both of these recommendations, stating thoroughly his reasons for concluding that several of the factors stated in 18 U.S.C. § 3553(a) warranted a sentence above the guideline range. While not explicitly departing upward under USSG § 4A1.3, in rejecting Humphrey's request for a downward departure he noted that Humphrey's criminal record reflected a "lot of leniency over the years," that Humphrey's 12 points were the maximum before being moved into Category VI, and that certain points were not awarded because of Guidelines limitations. J.A. 91-92.[3]

Examining the § 3553(a) factors, the court relied most heavily on the need to promote respect for the law and the need to protect the public, noting that Humphrey's record and his statements to medical personnel at Butner made it clear he had no respect for the law and would continue to break it upon release by, e.g., illegal drug use. This made it inevitable, according to the court, that Humphrey would have further confrontations with law enforcement officials and therefore would be "essentially, a powder keg waiting to explode." J.A. 93. The court noted that, according to the

---

[3]Ordinarily the propriety of a departure under the Guidelines should be considered explicitly before a variance sentence is imposed. See U.S. v. Fancher, 513 F.3d 424, 427 n.1 (4th Cir. 2008).

Butner report, it was likely that Humphrey would become depressed and hostile in the future if not able to live as he chose, thus becoming likely to threaten himself and others. Finally, the court also expressed skepticism that Humphrey, if permitted to return to Parsons, would cooperate with the mental health and substance abuse treatment he clearly needed.

While the judge thus concluded that the maximum ten year sentence was warranted, he alleviated that result by awarding Humphrey credit for the 29 months he had been in state custody, first on the wanton endangerment charge and then in error, because the local jail had not timely notified the U.S. Marshal to transfer Humphrey into federal custody. The final sentence, then, was 91 months in prison.[4]

## II

On appeal, Humphrey challenges only the upward variance sentence of 91 months, arguing that the district court misapplied or failed to consider the statutory factors under 18 U.S.C. § 3553(a) and that the extent of the variance was excessive under the facts of the case, resulting in an unreasonable sentence. We disagree.

---

[4]This is to be followed by three years of supervised release, not challenged by the defendant. The fine was waived, and the $100 special assessment was imposed.

Shortly after oral argument was heard in this case, the Supreme Court issued its opinions in <u>Gall v. U.S.</u>, 128 S. Ct. 586 (2007)and <u>Kimbrough v. U.S.</u>, 128 S. Ct. 558 (2007), which together "explain in detail the mechanics of <u>Booker's</u>[5] remedial holding," <u>U.S. v. Pauley</u>, 511 F.3d 468, 473 (4th Cir. 2007). As further explained by this court,

> appellate review of the reasonableness of a sentence focuses on whether the sentencing court abused its discretion in imposing the chosen sentence. This abuse of discretion standard of review involves two steps, the first examines the sentence for significant procedural errors, the second looks at the substance of the sentence. The Court in <u>Gall</u> explained that "significant" procedural errors include errors such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range."
>
> Substantive reasonableness review entails taking into account the "totality of the circumstances, including the extent of any variance from the Guidelines range." If the sentence is within the Guidelines range, we, as an appellate court, may, but are not required to, presume that the sentence is reasonable. However, if the sentence is outside the Guidelines range, we are prohibited from applying a presumption of unreasonableness. To hold otherwise would fatally undermine the Court's holding in <u>Booker</u>. In reviewing the substantive reasonableness of the sentence, we may consider "the extent of the deviation," but we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Even if we would have reached a different sentencing result on our own, this fact alone is

---

[5]<u>U.S. v. Booker</u>, 543 U.S. 220 (2005).

"insufficient to justify reversal of the district court."

Id. at 473-74 (citations omitted).  See also U.S. v. Go, ____ F.3d ___, ____ (4th Cir. 2008).

B

In reviewing Humphrey's sentence, we first note that we find no procedural errors.[6]  The court gave notice of its intent to vary upward.  See U.S. v. Fancher, 513 F.3d 424, 430 (4th Cir. 2008). At the sentencing hearing the court correctly calculated the Guidelines range, allowed both defense counsel and the government to argue for the sentence they believed appropriate, carefully considered the § 3553(a) factors without presuming the Guideline range was reasonable, and thoroughly explained its reasons for varying upward.  See Pauley, 511 F.3d at 473.

The second question then is whether the sentence is substantively reasonable: under the totality of the circumstances, did the 3553(a) factors support a 91-month sentence and justify a 34-month increase above the Guideline range.  While this is a closer issue, after careful consideration of all the factors the court relied on, in their totality, we hold that the 34-month upward variance was not unreasonable.

---

[6]The only possible exception is the court's failure to consider explicitly the applicability of any upward departure under the Guidelines before varying upward.

10

Specifically, the court was warranted in its reliance on Humphrey's criminal record, the circumstances of the present offense, his statements to personnel at Butner, and even aspects of the defense expert's testimony to conclude, for the reasons the court explained, that a shorter sentence would not promote respect for the law or protect the public from the danger presented by Humphrey's behavior. The court appears to have focused on the likelihood of recidivism based on Humphrey's past conduct, his statements, and the nature of the current offense, without relying significantly on Humphrey's mental illness or need for treatment in itself as a grounds for variance. Finally, the court ameliorated its initial variance upward to 120 months by awarding the 29-month credit for all time served in state custody, even that which was also credited toward the wanton endangerment sentence.[7]

### III

Admittedly, the significant upward adjustment of a sentence imposed on behavior at least in part resulting from acknowledged mental illness is troubling.[8] This concern must be balanced, however, against the clear statutory purposes of sentencing relied

---

[7]Had this reduction not occurred, the outcome of this appeal might have been different.

[8]One circumstance, not presented to the court at sentencing, that might have supported a lower sentence is the availability of civil commitment under 18 U.S.C. § 4246 at the end of a sentence if the defendant continues to present a danger.

11

on by the judge in this case.  As noted earlier, "[e]ven if we would have reached a different sentencing result on our own, this fact alone is 'insufficient to justify reversal of the district court.'" <u>Pauley</u>, 511 F.3d at 474 (<u>quoting</u> <u>Gall</u>, 128 S. Ct. at 597). Accordingly, for all the reasons stated above, Humphrey's sentence is affirmed.

<u>AFFIRMED</u>