**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-4726

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

WILLIE LAMARK WATERS, a/k/a Mark, a/k/a Boom
Boom, a/k/a Bang 'em up,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Jerome B. Friedman, District
Judge.  (2:07-cr-00022-JBF)

Submitted:  April 22, 2008          Decided:  June 6, 2008

Before MICHAEL and DUNCAN, Circuit Judges, and Jackson L. KISER,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Michael S. Nachmanoff, Federal Public Defender, Alexandria,
Virginia, Keith Loren Kimball, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for
Appellant.  Chuck Rosenberg, United States Attorney, Alexandria,
Virginia, James Ashford Metcalfe, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Willie Lamark Waters ("Waters") pleaded guilty to (1) possession and sale of a stolen firearm, in violation of 18 U.S.C. § 922(j); (2) distribution of 2.7 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm with an altered or obliterated serial number, in violation of 18 U.S.C. § 922(k); and (4) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). The district court sentenced Waters to 200 months' imprisonment for the first three counts and an additional consecutive 60 months' imprisonment, mandated by statute, on count four. On appeal, Waters challenges the reasonableness of this sentence. For the reasons that follow, we affirm.

I.

Waters was indicted after twice selling firearms, and on one occasion crack cocaine along with a firearm, to a confidential informant, and being recorded by the Portsmouth Police Department and the Alcohol, Tobacco, and Firearms ("ATF") Task Force in the process. He subsequently pleaded guilty to all charges in the indictment and agreed to the underlying facts.

Prior to his sentencing, a probation officer prepared Waters's pre-sentence report ("PSR"). The PSR listed Waters's total offense level under the United States Sentencing Guidelines (the

"Guidelines") as 30. This included a 2-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Specifically, the PSR alleged that, "[F]ollowing his arrest for the instant offenses, [Waters] attempted to have a witness murdered so that [the witness] would not be available to testify against [him]." J.A. 149. As a result, the PSR also recommended denying Waters the offense level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1 cmt. n.4 ("Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."). The PSR listed Waters's "criminal history category" as III, based on his prior convictions. The corresponding Guidelines range for Waters's four offenses, based on this criminal history category and his offense level, was 181 to 211 months (121 to 151 months, plus the statutorily mandated consecutive sentence of 60 months for his conviction under 18 U.S.C. § 924(c)(1)(A)--carrying a firearm during and in relation to a drug trafficking crime).

At Waters's sentencing hearing, the government argued for an upward departure in his criminal history category on the grounds that category III did not adequately reflect the seriousness of his actual criminal history and his likelihood of recidivism. See U.S.S.G. § 4A1.3(a)(2)(E). The government cited a number of incidents detailed in the PSR, including Waters's alleged pointing

4

of a handgun at a victim and threatening the victim's life in September 2006, which resulted in a dismissed concealed weapons charge, and Waters's almost identical conduct in January 2007, which resulted in a charge of brandishing a firearm which was subsequently nol pressed.

In support of the September 2006 allegation, the government introduced into evidence a police report of the incident and statements made by the victim and his mother. One of the government's witnesses, ATF Agent Christopher Scott, also testified to the conversations that he had with those individuals in which they confirmed the allegations but declined to testify against Waters.

As to the January 2007 incident, the government called another witness, Officer Isaac Lopez of the Suffolk Police Department, who testified that Waters was accused of pointing a handgun at two female victims and threatening to fire the handgun into a van containing the victims as well as several children. Officer Lopez recounted his interviews with the victims and witnesses of the incident. Officer Lopez also testified that Waters admitted involvement in the incident but stated that he had not brandished a handgun, claiming instead that another individual had fired a handgun at him. The government submitted the victims' and witnesses' grand jury testimony to the court.

5

The government further argued that Waters's sentence should be increased due to several aggravating circumstances. Agent Scott testified to Waters's involvement in the violent "Williamstown Gang." In addition to describing several shootings in which the Williamstown Gang was allegedly involved, Agent Scott described a video confiscated by police which depicted Waters, along with several other known gang members, brandishing firearms and flashing the Williamstown Gang's signs. The government submitted still photos from this video to the court. Agent Scott further testified that Waters was often seen wearing the colors of the Williamstown Gang and went by the gang nickname "Bang em up."

Most significantly, Agent Scott went on to describe Waters's alleged attempt, while incarcerated, to hire a hit man to murder the government's principal witness against him. According to Agent Scott's testimony, Waters solicited a fellow inmate to locate someone who would murder the witness for a sum of money. Waters told the inmate that he was in contact with his own gang members to perform the murder but that he needed it done more quickly as his court date was fast approaching. The inmate reported Waters's request to law enforcement agents who then arranged for Waters to be contacted by an undercover officer posing as a "hitman." In a recorded telephone conversation, Waters gave detailed instructions to the undercover officer and stressed that the murder needed to be carried out immediately due to the imminence of his trial date.

6

Waters agreed to pay $3000 in installments for the crime. The government submitted a transcript of this recorded conversation to the court along with the supporting investigative summaries.

Waters did not submit any evidence or otherwise refute the government's allegations. He did, however, argue against the obstruction of justice enhancement, in favor of the acceptance of responsibility reduction, and against both of the government's motions for upward departures.

After hearing the above testimony and reviewing the evidence, the district court first found, by a preponderance of the evidence, that Waters should receive the U.S.S.G. § 3C1.1 obstruction of justice enhancement. The court then denied Waters the acceptance of responsibility reduction, stating, "The solicitation to murder one of the government's chief witnesses in order to prevent him or her from testifying . . . is clear evidence that he's not truly accepting responsibility for all of his criminal conduct." J.A. 110.

The court next found that there was sufficient evidence to corroborate the allegations that Waters had brandished a firearm and made violent threats in September 2006 and January 2007, and was a member of the Williamstown Gang. Based on the two "brandishing" incidents, and applying the incremental approach mandated by U.S.S.G § 4A1.3(a)(4)(B) and <u>United States v. Rusher</u>,

966 F.2d 868 (4th Cir. 1992),[1] the district court increased Waters's criminal history category from III to IV. This upward departure had the effect of increasing Waters's Guideline range from 181 to 211 months to 195 to 228 months.[2]

The district court then turned to the sentencing factors in 18 U.S.C. § 3553(a). The government had argued that Waters's "membership in a gang and the extent of [his] attempted obstruction" made this an "extraordinary" case where an upward variance in the sentence was appropriate. J.A. 120. Waters, however, urged the court to vary the sentence downward to only 10 years', or 120 months', imprisonment based on his feelings of remorse, his youth, troubled childhood, and limited violent criminal history. The court considered both parties' arguments and each § 3553(a) factor and determined that due to "the type of

---

[1] Rusher provides the following:

> Once the district court has decided to depart upward in the criminal history category, the majority of courts, in making their "reasonableness" inquiry, require the judge to refer first to the next higher category and allow the court to move on to a still higher category only upon a finding that the next higher category fails adequately to reflect the seriousness of the defendant's record.

966 F.2d at 884.

[2] At sentencing, the district court failed to include the obstruction of justice enhancement in its calculation and therefore misstated that this departure increased Waters's guideline range to 135 to 168 months. Neither party argues that this misstatement affected Waters's ultimate sentence, and it was subsequently corrected in the court's final order.

obstruction of justice in this particular case [and] the membership in . . . a very violent gang," an upward variance was warranted. The court sentenced Waters to a total of 260 months' imprisonment followed by a 5-year period of supervised release. Waters challenges this sentence on appeal.

II.

A.

The Supreme Court has recently clarified the limited scope of our review of district courts' sentencing determinations. It is now clear that we review all such determinations for abuse of discretion, whether or not the sentence imposed is within the advisory Guidelines range. See Gall v. United States, 128 S. Ct. 586, 597 (2007). "This abuse of discretion standard of review involves two steps[;] the first examines the sentence for significant procedural errors, the second looks at the substance of the sentence." United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007) (examining Gall, 128 S. Ct. at 596-97). Significant procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range." Gall, 128 S. Ct. at 597.

9

Our substantive review, by contrast, goes to the length and contours of the sentence imposed. When reviewing a sentence for substantive reasonableness, this court must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range . . . but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."[3] Id. This deference is premised on the district court's "greater familiarity . . . with the individual case and the individual defendant," and its expertise in sentencing matters. Rita v. United States, 127 S. Ct. 2456, 2469 (2007). Thus, "[t]he fact that we might reasonably conclude that a different sentence is appropriate is insufficient to justify reversal of the district court." United States v. Go, 517 F.3d 216, 218 (4th Cir. 2008) (emphasis added).

Under both prongs of our review, we examine the sentencing court's findings of fact for clear error and its legal conclusions de novo. See United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008).

## B.

Waters first asserts that the district court committed procedural error by "selecting a sentence based on clearly

---

[3]We may not apply a presumption of unreasonableness to sentences outside the Guidelines range. See Gall, 128 S. Ct. at 597.

10

erroneous facts." Gall, 128 S. Ct. at 597. He contends that the information underlying the upward departure in his criminal history level was unreliable and that the court erred in concluding otherwise. The government predictably disagrees.

The Guidelines provide that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." U.S.S.G. § 4A1.3(a)(1). Such information may include evidence that the defendant has engaged in significant "[p]rior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(a)(2)(E). When applying these Guidelines provisions in an advisory manner, the district court may make factual findings, such as whether information of similar conduct exists and if it is indeed reliable, using the preponderance of the evidence standard. See United States v. Battle, 499 F.3d 315, 322-23 (4th Cir. 2007). We will overturn these findings only if they are clearly erroneous. See id. at 323.

Far from constituting clear error, the district court's findings here were amply supported by the testimony of ATF Agent Scott and Officer Lopez, transcripts of grand jury testimony of Waters's several victims and the several witnesses to his criminal conduct, as well as photographs and police reports. Waters

11

presented absolutely no evidence to refute the allegations. Further, the court used this wealth of "reliable" information to increase Waters's criminal history category by only one level and explained its reasoning for doing so. In short, the district court committed no procedural error.

C.

Waters next contends that the district court erred in imposing the upward variance resulting in a 260 month sentence instead of the 228 month Guidelines maximum (after applying the departure). He argues that the variance was based on factors already accounted for in calculating the Guidelines range and in the upward departure discussed above. We disagree.

If the district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597. This court must uphold such a variance if the district court's rationale is "reasonable and premised on the factors set forth in § 3553(a)." Pauley, 511 F.3d at 474; see United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006) ("If the district court's justifications for the variance sentence are tied to § 3553(a) and are plausible, we will uphold the sentence as reasonable." (internal quotations omitted)).

12

Here, the district court considered each § 3553(a) factor carefully. In particular, when discussing "adequate deterrence and [the need] to protect the public" under § 3553(a), the court emphasized Waters's membership in a "very violent gang" and the "extent of [his] obstruction of justice"[4] as meriting a variance. J.A. 127-28. The court's rationale in this regard was both "reasonable" and "plausible," and appropriately cites to factors which set this case apart from the "heartland" of cases contemplated by the Guidelines. See Koon v. United States, 518 U.S. 81 (1996). Although, as Waters contends, the court applied the obstruction of justice enhancement when calculating his original Guidelines range, it was not precluded from considering "the cavalier method" in which Waters planned to have the witness against him killed and the fact that he was only fortuitously prevented from doing so by the actions of an informant in determining that a variance was in order. J.A. 127-28. As the district court said repeatedly, "there is obstruction of justice and there is obstruction of justice." Id. (emphasis added). The discretion afforded to district courts to fashion the appropriate

---

[4]Insofar as Waters challenges the district court's decision to give "excessive consideration" to these two factors, Supreme Court precedent makes clear that "attach[ing] great weight" to a particular factor or factors is "quite reasonabl[e]" so long as the sentence imposed is "sufficient, but not greater than necessary," to accomplish the goals of sentencing advanced in § 3553. Gall, 128 S. Ct. at 602; 18 U.S.C. § 3553(a); see also Kimbrough, 128 S. Ct. at 569-70.

13

sentence in each case is due precisely to situations such as this where the enhancement provided by the Guidelines fails to capture the gravity and flagrancy of the defendant's actions. See Koon, 518 U.S. at 99 ("To ignore the district court's special competence--about the ordinariness or unusualness of a particular case--would risk depriving [us] of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case." (internal quotations omitted)).

D.

Waters's final contention is that the combination of the upward departure and the upward variance resulted in an "excessive" and "substantively unreasonable" sentence, and "the reasons provided by the district court were simply not so compelling to justify the length of the sentence." Appellant's Br. at 20 (internal quotations omitted). Waters forges no specific challenges to the district court's reasoning, however, and instead just emphasizes the sentence's length and its deviation from the original Guidelines range. It thus appears that Waters is inviting us to engage in the type of mathematical calculation and appellate second-guessing precluded by the current abuse of discretion regime. See Gall, 128 S. Ct. at 597. 595 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the

14

district court. . . . We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."). On the facts before us, we cannot say that the sentence imposed here--260 months, only 49 months greater than the upper end of the originally calculated Guidelines range--is either unreasonable or unwarranted.

## III.

Because we find no abuse of discretion in the district court's sentencing determinations, the judgment of the district court is

AFFIRMED.