**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 09-4332**
_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

LARRY SELLERS, a/k/a L,

              Defendant - Appellant.


_____

**No. 09-4335**
_____

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

BRANDON PUGH,

              Defendant - Appellant.


_____

Appeals from the United States District Court for the Northern
District of West Virginia, at Clarksburg.  John Preston Bailey,
Chief District Judge.  (1:08-cr-00052-JPB-JSK-1; 1:08-cr-00052-
JPB-JSK-3)

_____

Submitted:  April 12, 2010        Decided:  June 10, 2010

_____

Before TRAXLER, Chief Judge, and WILKINSON and DUNCAN, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

---

Pamela R. Folickman, THE LAW OFFICE OF PAMELA R. FOLICKMAN, PLLC, Fairmont, West Virginia; Joshua P. Sturm, LAW OFFICE OF JOSHUA P. STURM, Ripley, West Virginia, for Appellants. Betsy C. Jividen, Acting United States Attorney, John C. Parr, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a two-day bench trial, the district court convicted Larry Sellers and Brandon Pugh of conspiracy to distribute more than five grams of cocaine base, in violation of 21 U.S.C.A. §§ 841(b)(1)(B), 846 (West 1999 & Supp. 2009) (Count One); and aiding and abetting the possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(B) (West 1999 & Supp. 2009) (Count Seven).  Sellers was also convicted of maintaining a drug-involved premises, in violation of 21 U.S.C.A. § 856(a)(2) (West Supp. 2009) (Count Eight).  Sellers received concurrent sentences of 292 months on Counts One and Seven and 240 months on Count Eight.  Pugh received concurrent sentences of 144 months on Counts One and Seven.  Finding no error, we affirm.

On appeal, both Defendants challenge the sufficiency of the evidence and the reasonableness of their sentences. Sellers also challenges the district court's denial of his motion to depose Ashley Adkins, a co-conspirator who pleaded guilty and testified for the Government at trial.

The criminal charges center around Sellers' drug trafficking in Morgantown, West Virginia.  Between February and May of 2008, Sellers supplied Adkins with crack cocaine on multiple occasions.  Adkins acted as a runner between individuals she knew who wanted crack cocaine, and her source,

3

Sellers. According to Adkins, she would call Sellers for crack and he would either come to her with the crack or she would hire a cab or have another crack user drive her to Sellers' apartment complex in Morgantown. Adkins would buy between $50 and $200 worth of crack from Sellers, while the taxi driver or customer waited in a car. During the course of the conspiracy, Adkins made purchases for herself and several customers.

One of Adkins' customers was a confidential informant who made several recorded buys from Adkins. One of those buys resulted in Adkins' arrest. On May 8, 2008, Adkins called Sellers to set up a purchase. Sellers, however, was out of town, and arranged to have his friend, Brandon Pugh, who was staying at his apartment for the weekend, handle the drug transaction. Following the transaction, police arrested Adkins and Pugh. Sellers was later arrested in Charlotte, North Carolina. Sellers and Pugh were indicted on the above charges, and Adkins was indicted on Count One and several counts related to her transactions with the confidential informant. Adkins pleaded guilty and was sentenced to forty-one months in prison. As part of her plea agreement she agreed to testify against Sellers and Pugh.

At trial, the Government relied on testimony from Adkins and the confidential informant, as well as law-enforcement officials, taxi drivers familiar with Adkins, and

4

several smaller-use drug users.  The Government also presented physical evidence found during the execution of a search warrant at Sellers' apartment.  Law-enforcement officials found twenty-seven grams of cocaine, two digital scales, plastic bags, and $4100 cash.  Law enforcement officials also seized Pugh's cell phone, which contained photos of the money and drugs found in the apartment.  At trial, Pugh testified and denied selling crack to Adkins.  Pugh claimed he received $150 from her, which he said was repayment for a loan she owed to Sellers.  Both Sellers and Pugh essentially argued that Adkins was responsible for the drugs in the apartment and for engaging in drug trafficking during the time in question.

First, Sellers claims the district court erred by not granting his motion to depose co-defendant Ashley Adkins. Sellers' claim lacks merit.  Sellers argues he was not able to cross-examine Adkins effectively without a pretrial deposition. Sellers claims this failure violated his right to exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500 (2006).  He is incorrect.  As an initial matter, no statute or case gives Sellers the authority to depose Adkins, who voluntarily chose not to speak with Sellers' attorney. Second, Sellers does not point to any potential exculpatory evidence that Adkins possessed.  Sellers had a copy of Adkins'

5

plea agreement and was able to challenge her credibility based on the concessions she received as part of the plea. Neither the Federal Rules of Criminal Procedure nor this court's case law require the district court to allow a defendant to depose a witness who is available for trial and voluntarily elects not to speak to defendant's counsel. Therefore, the district court did not abuse its discretion in denying Sellers' motion to depose Ashley Adkins.

Sellers and Pugh both challenge the sufficiency of the evidence supporting their convictions. In assessing the sufficiency of the evidence presented in a bench trial, we "must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." Elliott v. United States, 332 F.3d 753, 760-61 (4th Cir. 2003). "Substantial evidence" means "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996).

On appeal, Sellers and Pugh argue, as they did at trial, that Adkins' explanation of Sellers' drug-trafficking operation was uncorroborated and inadequate to support their convictions. We disagree. While Adkins both used and distributed drugs, she could not have conducted any business

6

without Sellers, who was her supplier. As demonstrated by numerous witnesses, Adkins did not generally have crack cocaine available for sale and had to make arrangements with Sellers if she wanted to distribute drugs. During the course of the conspiracy, one cab driver estimated that he drove Adkins to Sellers' apartment building between 200 and 300 times. Other cab drivers and drug users similarly corroborated Adkins' frequent drug purchases from Sellers. These transactions are also supported by the parties' cell phone records, showing frequent calls consistent with drug trafficking.

Finally, Sellers and Pugh challenge the calculation and reasonableness of their sentences. It is now well settled that, after Booker v. United States, 543 U.S. 220 (2005), this court reviews a sentence for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007); see also United States v. Layton, 564 F.3d 330, 335 (4th Cir.), cert. denied, 130 S. Ct. 290 (2009). This review requires appellate consideration of both the procedural and substantive reasonableness of a sentence. Gall, 552 U.S. at 51. In determining procedural reasonableness, this court considers whether the district court properly calculated the defendant's advisory Guidelines range, considered the 18 U.S.C. § 3553(a) (2006) factors, analyzed any arguments presented by the parties, and sufficiently explained the selected sentence. Id.

7

"Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an individualized assessment based on the particular facts of the case before it." United States v. Carter, 564 F.3d 325, 330 (4th Cir. 2009) (internal quotation marks omitted). We next assess the substantive reasonableness of the sentence, "taking into account the 'totality of the circumstances, including the extent of any variance from the Guidelines range.'" United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007) (quoting Gall, 552 U.S. at 51).

The Defendants raise challenges to both the procedural and substantive reasonableness of their sentences. Sellers claims the trial court erroneously calculated the amount of drugs involved and erroneously imposed a two-point leadership enhancement. Sellers' claims, even if they had merit, would have no effect on the calculation of his adjusted offense level because he was sentenced as a career offender. The district court made this clear, and Sellers did not object to the career offender designation. Further, to the extent that Sellers challenges the length of his sentence, his claim is without merit. The district court considered the 18 U.S.C. § 3553(a) factors and found Sellers' conduct in this offense, as well as his previous felony convictions, justified a sentence in the middle of the Sentencing Guidelines range. On appeal, Sellers

8

has not rebutted the presumption that his within-Guidelines sentence was reasonable.

Pugh also challenges the calculation of his sentence. He claims the district court failed to consider his relatively minor role in the offense when evaluating the § 3553(a) factors. Additionally, Pugh claims the district court erred in converting the cash found in the apartment to cocaine base and failing to deduct legitimate funds from the drug proceeds.

We find that the district court properly considered Pugh's involvement in the offense, which included supplying cocaine base to Adkins when Sellers was in Florida. Similarly, in fashioning Pugh's sentence, the district court properly considered Pugh's prior felony convictions and then did, in fact, impose a downward variance of twenty-four months from the bottom of the properly calculated Guidelines range. Further, Pugh does not challenge the district court's authority to convert some of the money to drugs, only the court's decision to convert the money to cocaine base rather than marijuana and the court's failure to deduct $2900 in allegedly legitimate proceeds from the $4100. Considering that this case principally involved

crack and that Pugh handled and photographed all the money, we find the district court did not err.[*]

For the above reasons, we affirm the convictions and sentences for Sellers and Pugh.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[*] In reviewing a district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Sosa-Carabantes, 561 F.3d 256, 259 (4th Cir. 2009).  At the sentencing hearing in Pugh's case, the district court supported its decision to hold Pugh responsible for sixty grams of cocaine stating: "[w]ith regard to relevant conduct, he is only being held responsible for the conduct related to that night.  Yes, most of the money was in Mr. Sellers' room but it is clear from the marked buy money that Mr. Pugh put it there."