PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                    No. 06-4552

MAURICE DUGGER,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(3:05-cr-00197)

Argued: February 2, 2007

Decided: May 9, 2007

Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.

Vacated and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Williams joined.

## COUNSEL

**ARGUED:** Troy Nino Giatras, Charleston, West Virginia, for Appellant. Stephanie Lou Haines, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee. **ON BRIEF:** Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

Maurice Dugger appeals his 121-month sentence for distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). Dugger argues that the sentencing court erred by refusing to allow an acceptance-of-responsibility reduction under U.S. Sentencing Guidelines Manual § 3E1.1 and by increasing his offense level by two levels under U.S.S.G. § 2D1.1(b)(3). As we have recently stated, "[a]lthough the guidelines are no longer mandatory, courts must still calculate the correct guidelines range in order to fashion a reasonable sentence." *United States v. Hargrove*, 478 F.3d 195, 197 (4th Cir. 2007) (citations omitted). Because the district court misapplied § 2D1.1(b)(3), we vacate Dugger's sentence and remand for resentencing.

I.

On September 5, 2004, police officers in Huntington, West Virginia, observed Maurice Dugger sitting in a parked car. Aware that Dugger had an outstanding warrant for his arrest, the officers approached the car. Dugger drove away, and the police followed. Putting an end to the car chase, Dugger leapt from his moving vehicle and ran, but officers apprehended him. The officers found a bag containing 4.4 grams of crack cocaine ("crack") on the route along which Dugger had fled. Officers then arranged on September 21, 2004, for a confidential informant to purchase crack from Dugger. When the informant went to Dugger's house, Dugger sold him 1.44 grams of crack.

A grand jury returned a one-count indictment against Dugger on September 20, 2005. The indictment charged Dugger with distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Officers arrested Dugger on September 28, 2005. Dugger spent the next few months awaiting trial in the Carter County Detention Center in Grayson, Kentucky.

While incarcerated, Dugger became involved in a scheme among several inmates and guards at the detention center to deal marijuana

and Xanax pills. Prison officials intercepted packages of illegal drugs on December 5, 2005, and January 28, 2006. Dugger admitted to FBI investigators on February 3, 2006, that he had been dealing drugs in the prison since at least mid-November 2005.

On February 13, 2006, Dugger pleaded guilty to the charge of distributing cocaine base in Huntington, West Virginia. At his sentencing hearing on May 15, 2006, the district court denied Dugger's request for a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 (2005). The court found that Dugger's drug dealing while in prison eviscerated his claim that he had accepted responsibility for the drug-dealing crime to which he had pled guilty. The district court then applied a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(3) for the specific offense characteristic that "the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility."

Calculating Dugger's total offense level to be 30 and criminal history category to be III, the court sentenced Dugger to the lower end of the 121- to 151-month range recommended by the sentencing guidelines. Dugger objects to his sentence. He claims that the district court erred by denying the acceptance-of-responsibility reduction and by applying the special enhancement.

## II.

We review a district court's decision concerning an acceptance-of-responsibility adjustment for clear error. *United States v. May*, 359 F.3d 683, 688 (4th Cir. 2004). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). We must give "great deference" to the district court's decision because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.5. The sentencing judge is in the best position "to evaluate the defendant's acts and statements to determine whether the defendant has accepted responsibility for his or her criminal conduct." *United States v. Kise*, 369 F.3d 766, 771 (4th Cir. 2004). Without any

evidence compelling us to conclude that the district court has committed clear error in its evaluation of the defendant, we will uphold its decision on the § 3E1.1 reduction.

The sentencing guidelines allow a district court to reduce the defendant's offense level by two if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The commentary to the guidelines provides district courts with several factors to consider when evaluating whether a defendant has clearly demonstrated acceptance of responsibility. The factors relevant to the consideration of Dugger's claim are:

> (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct);

> (b) voluntary termination or withdrawal from criminal conduct or associations; . . .

> (d) voluntary surrender to authorities promptly after the commission of the offense; . . .

> (g) post-offense rehabilitative efforts;

> (h) timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1 cmt. n.1. To earn the reduction, a defendant must prove to the court by a preponderance of the evidence "that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996). A guilty plea may be evidence of acceptance, but "it does not, standing alone, entitle a defendant to a reduction as a matter of right." *United States v. Harris*, 882 F.2d 902, 905 (4th Cir. 1989). We recognize that a "district court is not obligated to grant an unrepentant criminal a two-step reduction in return for grudgingly cooper-

ating with authorities or merely going through the motions of contrition." *Id.* at 905-06.*

The decision to grant an acceptance-of-responsibility reduction often depends on the actions of the defendant following his or her arrest or plea. Considering the activities in which Dugger engaged while he was in the detention center awaiting trial, we cannot find that the district court clearly erred by determining that Dugger did not truly accept responsibility for his offense and by denying the two-level reduction. Although Dugger admitted his drug dealing both in Huntington and inside the detention center, the fact that he chose to deal drugs while incarcerated undermines his claim that he sincerely regretted and accepted responsibility for the illegal actions that caused his incarceration.

This Court has upheld a denial of the reduction where the defendant continued to use and distribute cocaine after he was indicted and after he entered into a plea agreement with the government. *United States v. Kidd*, 12 F.3d 30, 34 (4th Cir. 1993). We have also upheld a district court's denial of the reduction where a defendant guilty of mail fraud and money laundering accumulated $48,000 in credit card debt between his guilty plea and his sentencing. *United States v. Walker*, 112 F.3d 163, 165 (4th Cir. 1997). The defendant had promised in his plea agreement to provide restitution to the victims of his offenses. The district court concluded that his post-plea actions proved that he was not truly remorseful and did not accept his responsibility to provide restitution. *Id*.

---

*The guidelines also advise that a guilty plea is evidence of, but not dispositive proof that, a defendant has accepted responsibility for his or her offense:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction and . . . any additional relevant conduct . . . will constitute significant evidence of acceptance of responsibility. . . . However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.

U.S.S.G. § 3E1.1 cmt. n.3.

Dugger argues that his guilty plea and his cooperation with authorities should be enough to earn him the two-level acceptance of responsibility reduction. He points to the fact that he admitted not only the facts of the charged offense but also his criminal conduct in the detention center. He cites the sentencing guidelines commentary that allows a defendant to receive a reduction even if he or she has not been forthcoming about relevant conduct as evidence that he has earned his reduction by admitting his drug activity while in jail awaiting trial. Dugger also attempts to distinguish *Kidd* by arguing that Kidd continued selling the same types of drugs in the same manner as his indictment charged, whereas Dugger's subsequent criminal conduct was independent of his charged offense and did not affect his accepting responsibility for that charge.

We find Dugger's arguments unpersuasive. Although he is correct that he admitted the conduct of his offense and his subsequent criminal conduct, his overly literal interpretation of the guidelines misses the meaning of the law. A court can look for a clear demonstration of acceptance of responsibility in truthful admissions, guilty pleas, voluntary termination of or withdrawal from criminal conduct, prompt surrender to the authorities, attempts at rehabilitation, and the timeliness of the acceptance of responsibility. Although Dugger truthfully admitted his conduct and pleaded guilty, the other factors suggested by the guidelines commentary do not weigh in his favor. Dugger was first identified as a crack dealer in Huntington, West Virginia, on September 5, 2004, when he dropped some crack as he fled from police. Sixteen days later, he sold crack to a confidential informant. That sale was the basis for the indictment handed down a year later. Dugger has presented no evidence that he ceased his crack sales until he was arrested under the indictment, despite his having been apprehended previously.

Dugger's actions in the Carter County Detention Center also undermine his argument that he has withdrawn from criminal conduct or has attempted rehabilitation. His attempt to distinguish *Kidd* therefore fails. Dugger correctly points out that while the indictment charged him with selling crack in Huntington, he did not sell crack while incarcerated. His assertion that his sale of marijuana and Xanax while incarcerated does not betray his acceptance of responsibility for the crack sales, however, cannot withstand scrutiny. It appears that Dug-

ger had no problem continuing his career as a drug dealer while he was incarcerated; he simply altered his offerings to meet the drugs he had available to him. Because Dugger's actions showed that he did not truly accept responsibility for his offense and was "merely going through the motions of contrition," the district court did not clearly err by denying Dugger the reduction. *Harris*, 882 F.2d at 906.

### III.

Dugger next claims that the district court erred by applying a two-level enhancement to his base offense level for the specific offense characteristic that punishes an offender if the object of his or her offense was to distribute drugs in a prison. He argues that the enhancement was not appropriate because the object of his offense was to sell drugs in Huntington, West Virginia, not in the detention center in Kentucky. He asserts that his sale of drugs while in the detention center constituted a separate offense and should not be the basis for the enhancement under § 2D1.1(b)(3).

A sentencing court's application of a specific offense characteristic is a mixed question of law and fact that we review de novo. *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006); *United States v. Daughtrey*, 874 F.2d 213, 217-18 (4th Cir. 1989). The specific offense characteristic sections of the sentencing guidelines allow a district court to increase the base level of an offense carried out in a certain way, with certain goals, or by a certain person. The characteristic at issue in this case is the distribution of illegal drugs in a correctional facility, which provides for a two-level increase "[i]f the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility." U.S.S.G. § 2D1.1(b)(3). The sentencing guidelines define an offense as "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1 Cmt. n.1(G). In light of the guidelines definition of *offense*, our analysis is two-fold. First, we must ask whether the object of Dugger's charged offense was to sell drugs in prison. Second, we must ask whether Dugger's sales of drugs while incarcerated qualify as relevant conduct to be included with his offense for purposes of sentencing.

Dugger was charged with selling crack in Huntington, West Virginia. It is clear that the object of that offense was not to distribute

controlled substances in a correctional facility. The enhancement, therefore, is not appropriate based upon Dugger's charged offense alone. Dugger's distribution of marijuana and Xanax in the Carter County Detention Center will support the application of the enhancement only if it qualifies as "relevant conduct" under § 1B1.3.

We understand relevant conduct for the purposes of this appeal as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," and "all acts and omissions [by the defendant] . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction," U.S.S.G. § 1B1.3(a), "if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior" U.S.S.G. § 3D1.2(d). Conduct or offenses in a "common scheme or plan . . . must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 Cmt. n.9(A). Conduct may also be considered "relevant conduct" if the offenses "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* n.9(B). We can consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* The guidelines commentary warns that "[w]hen one of the above factors is absent, a stronger presence of at least one of the factors is required." *Id.*

We find that Dugger's sale of drugs while in the detention center does not meet the requirements to be considered "relevant conduct" despite the government's argument to the contrary. Dugger's activities in the detention center cannot qualify as acts that occurred during, in preparation for, or in the course of attempting to avoid detection or responsibility for his charged offense of selling crack in Huntington. To determine whether those activities constituted part of a common scheme or plan that would qualify them as relevant conduct, we must consider the factors outlined in the guidelines commentary.

Although Dugger's offenses in Huntington and in the detention center were similar in that they both involved the sales of drugs, none

of the other factors can support a finding that the offenses were part of a common scheme or plan or were ongoing or continuous in nature. The sales had different customers, different accomplices, different methods, and different purposes. More than a year elapsed between Dugger's sale of crack in Huntington and his sale of marijuana and Xanax in the detention center. We find no similarities sufficient to warrant our concluding that they constituted "a single episode, spree, or ongoing series of offenses." We therefore conclude that Dugger's sale of drugs while incarcerated in Carter County Detention Center does not qualify as "relevant conduct" under § 1B1.3.

Because Dugger's sales of drugs inside the detention center do not qualify as "relevant conduct" to be included with the charged offense under U.S.S.G. § 1B1.3, and because the object of Dugger's charged offense was to sell crack in Huntington, not in prison, we hold that the district court misapplied § 2D1.1(b)(3). Dugger should not have received the two-level enhancement.

IV.

In light of the fact that Dugger continued to sell drugs while awaiting trial in the Carter County Detention Center, we uphold the district court's denial of an acceptance of responsibility reduction under § 2E1.1(a) of the guidelines. Because the district court misinterpreted § 1B1.3 and misapplied the specific offense characteristic § 2D1.1(b)(3), however, we vacate Dugger's sentence and remand for resentencing consistent with this opinion.

*VACATED AND REMANDED*