**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-5192**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

  v.

LUIS MANGUAL, JR., a/k/a Darin Harris,

    Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.   Roger W. Titus, District Judge. (8:04-cr-00235-RWT-2)

Submitted:  April 29, 2008    Decided:  May 22, 2008

Before WILKINSON and NIEMEYER, Circuit Judges, and WILKINS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

William C. Brennan, Jr., William A. Mitchell, Jr., BRENNAN, SULLIVAN & MCKENNA, LLP, Greenbelt, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Deborah A. Johnston, Robert K. Hur, Assistant United States Attorneys, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Luis Felipe Mangual, Jr., appeals his life sentence after being convicted of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, one kilogram or more of heroin, and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (2000), nineteen counts of use of a communications device in furtherance of the drug conspiracy, in violation of 21 U.S.C. § 843(b) (2000), four counts of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C.A. § 841 (West 1999 & Supp. 2007), possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C.A. § 841, interstate travel with intent to promote and carry on a business enterprise involving narcotics, in violation of 18 U.S.C.A. § 1952 (West 2000 & Supp. 2007), conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (2000), and money laundering, in violation of 18 U.S.C.A. § 1956(a)(1)(A)(I) (West 2000 & Supp. 2007).

On appeal, Mangual challenges his sentence, contending the district court erred in: (1) calculating the amount and type of drugs attributable to him; (2) determining that he should be held responsible for a firearm possessed by a co-conspirator; (3) determining that he held a supervisory role within the conspiracy; (4) denying any adjustment for acceptance of responsibility; (5) imposing an unreasonable sentence; (6) making sentencing

- 2 -

determinations based solely on judicial findings; and (7) imposing an enhanced sentence without prior notice pursuant to 28 U.S.C. § 851 (2000).  Mangual has also filed a motion requesting leave to file a pro se supplemental brief, in which he raises additional claims relating to his sentence.  Finding no error, we affirm.


I

Appellate review of a district court's imposition of a sentence is for abuse of discretion.  Gall v. United States, 128 S. Ct. 586, 597 (2007); see also United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007).  The appellate court must first ensure that the district court committed no procedural errors, such as "failing to calculate (or improperly calculating) the Guideline range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guideline range."  Gall, 128 S. Ct. at 597.  "In assessing a challenge to a sentencing court's application of the Sentencing Guidelines," this court reviews a district court's "factual findings for clear error and its legal conclusions de novo".  United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006).

Mangual's first claim challenges the district court's determination of his base offense level, asserting that the total amount of drugs held attributable to him was "purely speculative, procedurally improper, and unsupported by the record."  Pursuant to U.S. Sentencing Guidelines Manual ("USSG") § 1B1.3(a)(1) (2005), in determining the proper base offense level to apply to a defendant involved in a drug conspiracy, the defendant is responsible for his own acts, as well as for "all reasonably foreseeable acts" of his co-conspirators taken in furtherance of the joint criminal activity.  See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999); United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993).  The Guidelines do not require precise calculations of drug quantity, as the district court's approximation is not clearly erroneous if supported by competent evidence.  Randall, 171 F.3d at 210.  If the district court relies on the drug quantity included in the presentence report ("PSR"), the defendant bears the burden of establishing that the information is incorrect, as "mere objections are insufficient."  Id. at 210-11.

At sentencing, the Government presented testimony from DEA Agent Charles Hedrick and Officer Thomas Eveler.  Hedrick's testimony related to a ledger recovered from the residence of Luis

F. Mangual, Sr.,[1] that listed the quantity of drugs received and distributed by Mangual, Sr., including various transfers of cocaine and heroin to his son.  According to Agent Hedrick's analysis of the ledger, between October 2002 and June 2004, a total of 549 kilograms of cocaine, worth approximately $ 11.5 million, was received by Mangual, Sr., from an individual identified as "Cucho." During this period, Mangual, Sr., also received 14.5 kilograms of heroin, worth approximately $1.1 million.  The ledger indicated that Mangual, Sr., provided his son with between 100 to 140 kilograms of cocaine and approximately 5 kilograms of heroin, with the drugs sold to Mangual at a discounted price compared to other buyers.  Pursuant to USSG § 2D1.1(a)(3), the district court found Mangual was responsible for "substantially more than 150 kilograms" of cocaine, resulting in a base offense level of 38, as the amount of narcotics attributable to Mangual was not limited solely to the drugs sold to him, but also included the total amount of drugs received by his father.

At sentencing, Mangual contended the district court should limit its analysis to the amount of drugs he actually received.  However, in light of Mangual's close association with his father within the jointly undertaken criminal operation, the district court had sufficient grounds to hold Mangual responsible

---

[1]Mangual, Sr., who is Mangual's father and was charged as a co-conspirator, pled guilty to conspiracy to distribute and possess with intent to distribute controlled substances.

for the total amount of narcotics received by his father. In the wiretapped telephone conversations, Mangual and his father often spoke to one another about the operation of the drug enterprise, discussing matters such as supply sources, customers, quality of the drugs, transportation of the narcotics, and the activities of other members of the conspiracy. On one occasion, Mangual, Sr., informed his son that he was awaiting a shipment of 200 kilograms of cocaine from a supplier. On another occasion, Mangual was provided with samples of heroin to do a "product test" to help his father decide whether to purchase larger amounts from another supplier.

Mangual's close relationship with his father within the conspiracy was clearly evinced by the fact that Mangual was expected to take over his father's position in the drug enterprise while Mangual, Sr., was in the hospital. Mangual, Sr., intended for his son to run the entire operation during his absence and had discussed this matter with his suppliers in order to ensure the supply of narcotics would not be interrupted. Though Mangual was arrested before this transition occurred, the fact that he was expected to serve as the head of the distribution operation demonstrated he was well aware of the scope of his father's criminal activities. Therefore, we find the district court had ample evidence to support its finding that the drug deliveries to

Mangual's father were reasonably foreseeable acts taken in furtherance of their joint criminal activity.

Mangual also contends the district court erred by failing to make any finding as to whether he and his father intended or were capable of delivering the amount of drugs held attributable to them. However, this claim is wholly without merit. The district court is required to exclude an unsuccessfully negotiated amount of narcotics only when a defendant "lacked both the intent *and* the ability to complete the drug transaction." United States v. Brooks, 957 F.2d 1138, 1151 (4th Cir. 1992). In this case, not only did Mangual and his father clearly intend to distribute the narcotics for which they were held responsible, but Officer Eveler specifically stated that Mangual, Sr., was capable of distributing at least 200 kilograms of cocaine. While Mangual notes the district court made no finding regarding the drugs he received from another supplier, Edward Barber, such a finding was unnecessary, as the court had already determined Mangual was responsible for substantially more than 150 kilograms of cocaine based solely on his dealings with his father. Accordingly, we conclude the district court did not err in calculating Mangual's base offense level.

B

Mangual's next contention is the district court erred by holding him responsible for a firearm recovered from the residence

of a co-conspirator, Travel Riley,[2] as there was no evidence Mangual had ever been to the residence or was otherwise aware that Riley possessed a firearm.[3] Under USSG § 2D1.1(b)(1), a two-level offense level enhancement shall be imposed if a dangerous weapon, including a firearm, was possessed during the narcotics offense. The adjustment is applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), comment. (n.3). In order to demonstrate that a weapon was present, the Government need show only that "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. McAllister, 272 F.3d 228, 233-34 (4th Cir. 2001) (internal quotation marks and citation omitted). Pursuant to USSG § 1B1.3(a)(1)(B), a defendant may be held responsible for a firearm possessed by another member of the

---

[2]Riley pled guilty to conspiracy to distribute and possess with intent to distribute 500 grams of cocaine and possession of a firearm in furtherance of a drug trafficking crime.

[3]Mangual also contends the district court failed to determine: (1) whether Riley's possession of the firearm occurred during the commission of the offense or in furtherance of that offense; and (2) whether it was clearly improbable that the weapon was connected with the offense. However, Mangual failed to raise either of these objections before the district court. At sentencing, the district court noted that it was "undisputed" that the firearm was seized in proximity to drugs and cash that were part of the conspiracy. See Fed. R. Crim. P. 32(I)(3) ("At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact."). Accordingly, because Mangual failed to raise these issues, there was no error by the district court.

conspiracy if possession of the firearm was reasonably foreseeable to the defendant and "in furtherance of the jointly undertaken criminal activity." See United States v. Kimberlin, 18 F.3d 1156, 1159-60 (4th Cir. 1994); Brooks, 957 F.2d at 1148-49.

As Mangual conceded at sentencing, the Government is not required to prove he possessed or had knowledge of the firearm held by Riley. See United States v. Nelson, 6 F.3d 1049, 1055-56 (4th Cir. 1993), abrogated on other grounds by Bailey v. United States, 516 U.S. 137 (1995); see also United States v. White, 875 F.2d 427, 433 (4th Cir. 1989). While Mangual contends that USSG § 2D1.1(b)(1) demands some form of a physical nexus between the defendant and the firearm held by a co-conspirator, the evidence is only required to show that "under the circumstances of the case, it was fair to say that it was reasonably foreseeable to [defendant] that his co-participant was in possession of a firearm." Kimberlin, 18 F.3d at 1160 (internal quotation and citation omitted). Furthermore, this court has held that "[a]bsent evidence of exceptional circumstances, . . . it [is] fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." Id.; see also White, 875 F.2d at 433.

In this case, the wiretap evidence indicated that Mangual's relationship with Riley went beyond that of a supplier

and a street-level dealer. At the Rule 11 hearing, Mangual conceded he was part of a drug conspiracy involving a number of individuals, including Riley, to whom he sold cocaine for distribution. While Mangual would often call Riley to discuss payment for the drugs he provided, he would also seek Riley's advice on how to deal with problems he was facing, including a police seizure of drug proceeds and the resulting issues with his supplier. In light of their close association and the sizeable amount of cocaine Mangual was providing to Riley, it was reasonably foreseeable that Riley would carry a firearm in furtherance of their joint drug distribution efforts. See Kimberlin, 18 F.3d at 1160. Accordingly, we find the district court did not err in imposing a two-level enhancement for possession of a firearm in furtherance of the conspiracy.

C

Mangual asserts the district court erred by imposing a three-level enhancement for his role in the conspiracy. A three-level role adjustment is appropriate when "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." USSG § 3B1.1(b). Such an enhancement requires, at a minimum, that the defendant was the manager or supervisor "of one or more other participants." USSG § 3B1.1, comment. (n.2); United States v. Bartley, 230 F.3d 667, 673 (4th

Cir. 2000). Factors distinguishing a "leadership" or "organizational role" from that of a manager or supervisor include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4).

Mangual contends the role enhancement was erroneous because he was an independent wholesale supplier of drugs and there was no evidence he "ever had anyone pick up or deliver drugs on his behalf."[4] However, according to the statement of facts provided by the Government at the Rule 11 hearing, Mangual received drugs from Barber by use of a courier, identified as Milton Boyd. During a wiretapped phone conversation, Mangual directed Boyd as to where the delivery was to be made. Boyd was then seen delivering a package, which included five kilograms of cocaine, to Mangual's residence. On another occasion, Mangual's girlfriend brought a bag to him in Baltimore that contained $43,500, which Mangual then provided to his supplier, Barber, in order to pay off an existing debt. Based on this evidence, it is clear Mangual directed others

---

[4]Mangual also claims the district court erred because it "went directly into an analysis of what kind of leadership role Mr. Mangual played, and therefore improperly assumed that he had played any leadership role at all." However, this claim is meritless.

to transport money and drugs as part of the ongoing criminal enterprise. See Bartley, 230 F.3d at 673-74.

Mangual's relationship with his purchasers is not comparable to the drug dealers in United States v. Sayles, 296 F.3d 219, 225 (4th Cir. 2002), who were involved in hand-to-hand transactions at the street level and were found to have had no role in planning or organizing the drug trafficking. Mangual had two tiers of buyers; some were "cash-and-carry," while others were "fronted" the drugs, meaning they would receive the drugs up front and pay for it later. In a number of calls with individuals who were fronted cocaine, Mangual discussed payment for the narcotics and expressed his frustration with lingering debts owed to him by the dealers. As is evidenced by his direct involvement in setting payment terms with his buyers, Mangual exercised some level of control over the dealers to whom he provided cocaine. See Bartley, 230 F.3d at 674; United States v. Howard, 923 F.2d 1500, 1503 (11th Cir. 1991).

Mangual's critical role within the conspiracy is further illustrated by his close relationship with his father. Described by Officer Eveler as his father's "right-hand man," Mangual was provided with samples of heroin by his father to carry out product tests and was expected to take over his father's position within the drug enterprise while Mangual, Sr., was in the hospital. See Brooks, 957 F.2d at 1152. Accordingly, we conclude the district

court did not clearly err in finding that Mangual's role within the conspiracy justified a three-level enhancement under USSG § 3B1.1(b).

D

Mangual also contends the district court erred in denying him a reduction for acceptance of responsibility. A two-level reduction in the defendant's offense level is warranted if he clearly demonstrates acceptance of responsibility for his offense. USSG § 3E1.1(a) (2005). An adjustment for acceptance of responsibility does not result automatically from the entry of a guilty plea; rather, in order to receive such a reduction, "the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." United States v. May, 359 F.3d 683, 693 (4th Cir. 2004) (internal quotation marks and citation omitted). In determining whether an adjustment is warranted, the district court may consider whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3." USSG § 3E1.1, comment. (n.1(a)).

While a defendant may remain silent with respect to conduct beyond the offense of conviction without affecting his ability to obtain a reduction, "a defendant who falsely denies, or

- 13 -

frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id. The district court's determination is entitled to "great deference" because of the sentencing judge's "unique position to evaluate a defendant's acceptance of responsibility." United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007) (citing USSG § 3E1.1, comment. (n.5)).

While the PSR recommended a two-level reduction, the Government opposed any adjustment on the ground that Mangual had failed to fully acknowledge his participation in the conspiracy; specifically, his denial of any involvement in heroin distribution. The district court agreed, concluding that, contrary to Mangual's assertions, his involvement was not limited to a small amount of heroin, as he had received five kilograms of heroin from his father. Mangual contends there is no evidence he "ever denied the conduct alleged or the relevant conduct,"[5] and that the district court's determination he received five kilograms of heroin from his father has "only minimal support in the record." In spite of Mangual's assertion that he was not personally involved in heroin,

---

[5]While Mangual cites to the Rule 11 hearing and his statement that he had no exception to the Government's factual proffer, he fails to note his attorney's subsequent objection in which he informed the court that his client was "not prepared to say he was involved in heroin." When questioned further by the district court, Mangual's attorney stated that "[t]here may have been others in this conspiracy . . . that were involved in heroin, but Mr. Mangual is not prepared to say today that he personally was involved in heroin."

the evidence presented at the sentencing hearing indicated that Mangual's father provided him with a sample of heroin, approximately 1.5 grams, to test in order to determine its quality before distribution. Mangual's father would ultimately receive a total of 14.5 kilograms of heroin during the relevant time period, and his ledger indicated that a total of five kilograms were delivered to Mangual. Therefore, in light of Mangual's false denials regarding his relevant conduct, we find the district court did not clearly err in denying an adjustment for acceptance of responsibility.

II

Having found no procedural errors, we next consider the substantive reasonableness of the sentence. Gall, 128 S. Ct. at 597. "Substantive reasonableness review entails taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Pauley, 511 F.3d at 473. While this court may presume a sentence within the Guidelines range to be reasonable, we may not presume a sentence outside the range to be unreasonable. Id. Moreover, we must give due deference to the district court's decision that the 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2007) factors justify imposing a variant sentence and to its determination regarding the extent of any variance. "Even if we would have reached a different sentencing result on our own,

this fact alone is insufficient to justify reversal of the district court." Id. at 474 (internal quotation marks and citation omitted).

At sentencing, the district court held that the Guidelines recommendation of a life sentence was appropriate. Mangual contends the district court failed to consider the fact that he had pled guilty to all charges and saved the Government significant time and expense. However, a defendant's timely guilty plea is not a factor that is required to be considered under § 3553(a). The district court adequately stated its reasons for imposing a life sentence, including the extremely serious nature of the offense, the harm to society caused by the wide-ranging drug conspiracy, Mangual's significant criminal history, and the need to afford adequate deterrence and protect the public from further criminal offenses. Accordingly, because Mangual has failed to overcome the presumptive reasonableness of his sentence, we find the district court did not abuse its discretion in sentencing him to life in prison.

III

Mangual also claims the district court violated his Sixth Amendment rights by holding him responsible for drug amounts higher than those set forth in the indictment, citing United States v. Booker, 543 U.S. 220, 232 (2005). However, this argument is

foreclosed by the remedial portion of <u>Booker</u>.  543 U.S. at 246. This court has held that, after <u>Booker</u>, the sentencing court must still calculate the appropriate advisory guidelines range by making any necessary factual findings under a preponderance of the evidence standard.  <u>See</u> <u>United States v. Battle</u>, 499 F.3d 315, 322-23 (4th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 1121 (2008); <u>United States v. Hughes</u>, 401 F.3d 540, 546 (4th Cir. 2005).  Accordingly, this claim is meritless.

IV

Mangual's final claim is the district court erred in sentencing him pursuant to the enhanced penalty provisions under 21 U.S.C.A. § 841(b)(1)(A) because the Government failed to file the required notice pursuant to 21 U.S.C. § 851.  However, this claim is patently frivolous.  The required notice was filed on March 21, 2006, the day of the Rule 11 hearing, and at the beginning of the plea hearing, the Government stated for the record that it had filed a notice of its intent to seek an enhanced mandatory minimum sentence.  Furthermore, at the sentencing hearing, Mangual conceded that he had received the notice, that he had been previously incarcerated, and that there was no dispute on this issue.

Accordingly, we affirm Mangual's sentence.  We deny Mangual's motion to file a pro se supplemental brief.  We dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED