**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 13-4775**

———————————

UNITED STATES OF AMERICA,

           Plaintiff – Appellee,

    v.

IDA MAE WEATHERS, a/k/a Ida Mae Snipe,

           Defendant - Appellant.

———————————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Marvin J. Garbis, Senior District Judge. (1:11-cr-00428-MJG-5)

———————————

Submitted: July 29, 2014        Decided: August 18, 2014

Amended: August 22, 2014

———————————

Before WILKINSON, NIEMEYER, and GREGORY, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Paul R. Kramer, Granger Maher, PAUL R. KRAMER, LLC, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Tamera L. Fine, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ida Mae Weathers pled guilty without a written plea agreement to: conspiracy to commit bank fraud, 18 U.S.C. § 1349 (2012); bank fraud, 18 U.S.C. § 1344 (2012); and aggravated identity theft, 18 U.S.C. § 1028A(a)(1), (c)(5) (2012). The charges related to a scheme to defraud various financial institutions by stealing credit cards from the purses and wallets of unsuspecting women in public restrooms and then using those cards to obtain extensions of credit from the institutions that had issued the cards. According to the presentence investigation report (PSR), there were over 100 victims of this conspiracy, which lasted from May 2007 until December 2012. Weathers received an aggregate sentence of 259 months. She now appeals, raising four issues. We affirm.

I

At sentencing, the district court found that the amount of loss was at least $200,000 but less than $400,000. Weathers contends on appeal that insufficient evidence supports this finding. We disagree.

Factual findings regarding amount of loss must be supported by a preponderance of the evidence. United State v. Miller, 316 F.3d 495, 503 (4th Cir. 2003). "[T]he loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available

2

information." Id. "[T]he determination of loss attributable to a fraud scheme is a factual issue for resolution by the district court," reviewable for clear error. United States v. Allmendinger, 706 F.3d 330, 341 (4th Cir.), cert. denied, 133 S. Ct. 2747 (2013). The deferential clear error standard warrants reversal only if we are "left with the definite and firm conviction that a mistake has been committed." United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (internal quotation marks omitted).

The Guidelines provide for increasing the base offense level based upon the greater of actual loss or intended loss. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) (2012). We have endorsed the use of credit limits to determine intended loss. United States v. Lewis, 312 F. App'x 515, 518 (4th Cir. 2008).

At sentencing, the Government introduced a spreadsheet, which was created by Detective Marjorie Coyne of the Baltimore County Police Department. The spreadsheet identified actual losses exceeding $150,000 and intended losses (calculated primarily by adding the stolen cards' credit limits) of over $400,000. In light of this evidence of intended loss, the district court's conservative determination that the amount of loss was at least $200,000, but less than $400,000, was not clearly erroneous.

Weathers next claims that the evidence does not support a four-level increase of her offense level based on her role as a leader or organizer of the offense. See USSG § 3B1.1. We review the district court's finding as to role in the offense for clear error. See U.S. v. Thorson, 633 F.3d 312, 317 (4th Cir. 2011). Testimony at sentencing demonstrated that it was Weathers who decided both who could join the conspiracy and when and where the thefts and related credit card fraud would occur. Additionally, Weathers stole virtually all of the wallets and credit cards while her confederates distracted the victims and acted as lookouts, and it was she who distributed the cards to her cohorts after instructing them how the cards were to be used. Clearly, the enhancement was proper.

III

Weathers claims that the district court erred when it did not award her a two-level reduction based on her acceptance of responsibility. See USSG § 3E1.1(a). We review this decision for clear error. See United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007). Entry of a guilty plea does not, "standing alone," earn a defendant a reduction for acceptance of responsibility. Id. Among the factors that are relevant to whether to grant the adjustment is "the timeliness of the

defendant's conduct in manifesting the acceptance of responsibility." USSG § 3E1.1, cmt. (n.1(H)).

Weathers' plea, which she entered after nearly a full day of jury selection had taken place and just before final jury selection, was hardly timely. By this point, the Government had spent a great amount of time and resources preparing for trial. In light of the last-minute decision to enter a plea, we find no clear error in the denial of the two-level adjustment.

IV

At sentencing, the district court found that Weathers' total offense level was 28, and her criminal history category was VI, for a Guidelines range on the conspiracy and bank fraud counts of 140-175 months. The court determined that an upward variance was warranted, especially in light of the nature of the offenses and Weathers' extensive criminal history. The court significantly varied from the Guidelines range, sentencing Weathers to 235 months for those crimes and twenty-four months, consecutive, for aggravated identify theft. Weathers contends that the variance was unwarranted.

We review Weathers' sentence "under a deferential abuse-of-discretion standard." See United States v. King, 673 F.3d 274, 283 (4th Cir. 2012). When the district court imposes a departure or variance sentence, we address "whether the sentencing court acted reasonably both with respect to its

5

decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). The district court "has flexibility in fashioning a sentence outside of the Guidelines range," and need only "'set forth enough to satisfy [us] that [it] has considered the parties' arguments and has a reasoned basis'" for its decision. United States v. Diosdado-Star, 630 F.3d 359, 364 (4th Cir. 2011) (quoting Rita v. United States, 551 U.S. 338, 356 (2007)).

We hold that the district court fulfilled its obligation under Diosdado-Star. The court imposed the variance based primarily on the nature of the offense and Weathers' extensive criminal history.[*] With respect to the offense, the district court spoke of its "incredible range and continuous professional program of criminal activity" as well as its impact on victims. The court stated that there was a need to protect the public from Weathers, who previously had committed numerous offenses using a similar modus operandi.

---

[*] Weathers had 32 criminal history points; only 13 points are required to qualify for category VI. Weathers' criminal history, which dates back at least to age eighteen, includes multiple convictions—primarily for theft and credit card fraud. The modus operandi used in the subject thefts dates back at least to 1994.

V

We accordingly affirm.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not significantly aid the decisional process.

AFFIRMED