PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4662

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

        v.

OTIS EUGENE BURNS,

             Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:13-cr-00120-CCE-1)

Argued: December 11, 2014          Decided: February 13, 2015

Before WILKINSON, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by published opinion.  Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Gregory joined.

**ARGUED:** Sophia L. Harvey, LIAO HARVEY PC, Winston-Salem, North Carolina, for Appellant.  Graham Tod Green, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

DUNCAN, Circuit Judge:

Otis Eugene Burns pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court found that he had used the firearm in an attempted murder, and therefore applied the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range for attempted murder to determine his sentence. Burns disputed that he had the requisite mens rea for attempted murder and argued that the Guidelines range for aggravated assault should have applied to his offense instead. Because Burns made this argument, the district court denied him a downward adjustment for acceptance of responsibility. Burns appeals from the denial of the acceptance-of-responsibility reduction, arguing that because he admitted to the offense of conviction--being a felon in possession of a firearm--and also to his physical conduct in discharging that firearm into an occupied vehicle, he is entitled to that downward adjustment. For the following reasons, we affirm.

I.

On February 1, 2013, Burns was involved in an altercation with Eric Poole at a convenience store. Later that night, Burns went to the apartment of Poole's ex-girlfriend, Breanna Tarlton, and asked where he could find Poole. Burns yelled at Tarlton

and fired a shot into the air with a Rossi .357 caliber handgun before leaving her apartment. Brittney Wilson, Burns's fiancée, provided a statement that the next day--on February 2, 2013--Burns told her he wanted "to kill" Poole for "jumping him at the store." J.A. 107–08, ¶5.

After reportedly making these comments to Wilson on February 2nd, Burns was in his parked car when he saw Poole in the driver's seat of a car in which Tarlton and three other passengers were also sitting. Wilson testified that she was in Burns's car at that time, and that she heard Burns tell Poole the following: "You thought that was funny from last night, what happened, what you did at the store. I told you I was going to shoot you." J.A. 53. She further testified that Burns initially left his car but then returned to retrieve his gun, and at that time he said to her, "I'm going to shoot him." J.A. 54–55. She also recalled telling the police that Burns told Poole, "Motherfucker, I'm going to kill you." J.A. 57. Under cross-examination, Wilson testified that her window was partially open and that while Burns was walking toward Poole's car, he said, "I'm going to shoot that motherfucker." J.A. 60–61.

After Tarlton exited Poole's car from the front passenger seat, Burns stood next to the open passenger door and fired one shot into the car--still occupied by Poole in the driver's seat

3

and at least one other person in the back seat[1]--but no one was injured.[2] Poole left in his vehicle. Burns initially drove in pursuit of Poole, firing a round into the air, but eventually broke off the pursuit.

A week later, on February 9, 2013, local law enforcement officers arrested Burns after finding him in a vehicle with a loaded .357 caliber handgun. A federal grand jury charged Burns with being a felon in possession of a firearm from "on or about February 1, 2013," to "on or about February 9, 2013." J.A. 6. Burns pleaded guilty pursuant to a written plea agreement. Under the terms of the agreement, if the district court found Burns eligible for a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and if Burns's total offense level was 16 or higher prior to that reduction, then the United States would recommend an additional one-level reduction pursuant to § 3E1.1(b) for timely assisting authorities in the investigation.

---

[1] It is unclear from the record how many of the three people originally in the back seat, if any, exited the car prior to the shooting.

[2] A police detective testified that the bullet passed downward over the center console, through the right front corner of the driver's seat underneath the knee area, and into the floorboard.

The Presentence Investigation Report ("PSR") recommended a base offense level of 27 after applying a "cross reference"--i.e., "an instruction to apply another offense guideline," U.S.S.G. § 1B1.5(a)--to the guideline for attempted murder based upon the shooting. The PSR also recommended a three-level reduction for acceptance of responsibility--two levels under § 3E1.1(a) and the additional level, referenced in the plea agreement, under § 3E1.1(b). With that reduction, Burns's offense level would have been 24, which, coupled with his criminal history category of V, would have resulted in a Guidelines range of 92 to 115 months' imprisonment.

Burns objected to the PSR, arguing that the evidence did not support the cross reference to attempted murder and that the court should instead cross-reference aggravated assault, which would have resulted in a Guidelines range of 70 to 87 months. The government responded that the attempted-murder cross reference was appropriate and that Burns's objections denied relevant conduct, thereby making him ineligible for the acceptance-of-responsibility reduction.

At sentencing, Burns challenged Wilson's statements and argued that the downward trajectory of the bullet showed that he intended not to cause Poole bodily harm, but instead to shoot into the empty passenger seat--"in essence, to give a warning shot." J.A. 73. After considering the bullet's downward

5

trajectory and Burns's arguments, the district court concluded that, "taken . . . together with the language used, as testified to by Ms. Wilson, and the conduct the night before[,] . . . the evidence of . . . attempted second-degree murder is very, very, very, very strong." J.A. 77. The court further concluded that Burns had falsely denied relevant conduct, and therefore declined to give Burns a three-level reduction for acceptance of responsibility. Based on those findings, the court determined that Burns's total offense level was 27. Coupled with Burns's criminal history category of V, this offense level resulted in a Guidelines recommendation of 120 to 150 months' imprisonment. See U.S.S.G. ch. 5, pt. A (2012). The statutory maximum for Burns's offense of conviction was 120 months' imprisonment. See 18 U.S.C. § 924(a)(2). After hearing argument from counsel on the appropriate sentence, the court sentenced Burns to 120 months' imprisonment. Burns timely appealed.

## II.

Before turning to the merits of this appeal, we first provide an overview of the relevant Guidelines sections and the district court's application of those sections. The section applicable to Burns's offense of conviction, possessing a firearm as a felon, is U.S.S.G § 2K2.1. The base offense level under that section ranges from 6 to 26, depending on the

circumstances.  U.S.S.G. § 2K2.1(a).  However, when a felon in possession of a firearm uses that firearm in connection with another offense, the sentencing judge should also determine the base offense level for that other offense.  See U.S.S.G. § 2K2.1(c)(1).  If the offense level for that other offense is higher than the offense level under § 2K2.1, then the court must apply the offense level for that other offense, thereby cross-referencing it to determine the ultimate sentence.  See id.

Here, the district court first determined that Burns's base offense level under § 2K2.1 was 24.  Then, because the government had shown by a preponderance of the evidence that Burns committed attempted murder with the firearm, the court calculated the base offense level for attempted murder.  Cf. United States v. Davis, 679 F.3d 177, 182 (4th Cir. 2012) ("[T]he Government has the burden to prove a cross-referenced offense by a preponderance of the evidence under U.S.S.G. § 2K2.1(c)(1)(A).").  Under subsection (a)(2) of the guideline for attempted murder, U.S.S.G. § 2A2.1, Burns's base offense level was 27.  Because Burns's base offense level was higher under the attempted-murder guideline (27) than under the felon-in-possession guideline (24), the court cross-referenced to the attempted-murder guideline, applying the base offense level of 27.

U.S.S.G. § 3E1.1 governs whether Burns could receive a downward adjustment for acceptance of responsibility from his base offense level of 27. That section instructs the sentencing judge to decrease the defendant's offense level by two if he "clearly demonstrates acceptance of responsibility for his offense," U.S.S.G. § 3E1.1(a), and to decrease it by one more level on motion by the government if his offense level prior to the two-level reduction was 16 or higher, U.S.S.G. § 3E1.1(b).

The commentary provides a non-exclusive list of "appropriate considerations" to determine whether a defendant is entitled to an acceptance-of-responsibility reduction. U.S.S.G. § 3E1.1 cmt. n.1. Only the first is relevant here:

> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and <u>truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)</u>. . . . [A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

U.S.S.G. § 3E1.1 cmt. n.1(A) (emphasis added).

In § 1B1.3--"Relevant Conduct (Factors That Determine the Guideline Range)"--the Guidelines provide that the bases for cross references under Chapter Two and adjustments under Chapter Three include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the

8

offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A). Therefore, "all acts and omissions" in connection with which Burns used the firearm are relevant conduct under § 1B1.3(a). And under § 3E1.1 cmt. n.1(A), falsely denying any of those acts or omissions is inconsistent with acceptance of responsibility and would support denial of the acceptance-of-responsibility reduction.

III.

With the preceding Guidelines provisions in mind, we now turn to the merits of this appeal. In response to our order, the parties briefed the following question: "By disputing that he possessed the mental state necessary to commit the cross-referenced (but uncharged) offense of attempted murder, did the appellant dispute 'relevant conduct' such that the district court properly denied him credit for acceptance of responsibility?" Order, May 1, 2014, ECF No. 26. In other words, is acting with a particular mental state relevant conduct within the meaning of U.S.S.G. 1B1.3(a)(1)(A)? We hold that the answer to both questions is yes.

Appellant argues that he did not deny relevant conduct because he admitted performing the physical act of shooting the

9

gun into the occupied vehicle,[3] albeit while still disputing that he intended to kill Poole. Therefore, Appellant argues, the district court erred by denying him an acceptance-of-responsibility reduction. We disagree.

## A.

We review the district court's interpretation of "the meaning and legal components of the term 'relevant conduct'" de novo, United States v. McVey, 752 F.3d 606, 610 (4th Cir. 2014), and its acceptance-of-responsibility determination for clear error, United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007).

## B.

When Burns disputed that he acted with the intent to kill, he denied "relevant conduct for which [he] is accountable under [U.S.S.G.] § 1B1.3." U.S.S.G. § 3E1.1 cmt. n.1(A). He thereby jeopardized his claim to an acceptance-of-responsibility reduction.[4] Our analysis is complicated by the fact that the

---

[3] Burns's counsel acknowledged at oral argument that the physical act of shooting was relevant conduct. See Oral Arg. at 5:40–6:10, United States v. Burns, No. 13-4662 (4th Cir. Dec. 11, 2014), available at http://coop.ca4.uscourts.gov/OAarchive /mp3/13-4662-20141211.mp3.

[4] We do not suggest that there is no avenue for challenging the application of a cross reference without jeopardizing a reduction for acceptance. A district court might well find that a defendant who admits to conduct underlying a cross reference, but disputes its legal significance, has nevertheless acted in a (continued)

Guidelines do not define "relevant conduct" in terms of an "offense." Rather, § 1B1.3(a) provides that, "[u]nless otherwise specified, . . . cross references in Chapter Two[] and . . . adjustments in Chapter Three[] shall be determined on the basis of," among other factors, "acts and omissions committed . . . by the defendant," U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added).

Burns extrapolates from this language that relevant conduct encompasses only physical acts. While not lacking in superficial appeal, this argument ultimately proves untenable. The "acts" referred to must include more than just physical movement. Otherwise, it would be impossible to cross-reference crimes of attempt, which, by definition, include a mens rea element. See, e.g., Martin v. Taylor, 857 F.2d 958, 961 (4th Cir. 1988) (noting that "[a]n attempt crime requires specific intent to commit a crime"). Yet, we have held that the "acts and omissions" provision provides a sufficient basis for cross references to crimes of attempt. For example, in United States v. Ashford, we held that "the district court properly imposed a cross reference pursuant to USSG § 1B1.3(a)(1)" to "attempted second-degree murder." 718 F.3d 377, 383 (4th Cir. 2013); see

manner consistent with acceptance of responsibility. As we explain, however, Mr. Burns disputes the conduct itself.

11

<u>also</u> <u>id.</u> (holding that U.S.S.G. § 1B1.3(a)(1) prescribes "sufficient conditions for relevant conduct"); <u>cf.</u> <u>United States v. Sealey</u>, 203 F. App'x 487, 490 (4th Cir. 2006) (per curiam) (affirming a cross reference to attempted murder where the defendant was aware that his conduct created a serious risk of death); <u>United States v. Rice</u>, 3 F. App'x 64, 67 (4th Cir. 2001) (per curiam) (affirming a cross reference to attempted sexual abuse based upon the motivation behind the defendant's attempted kidnapping).

Given that the "acts and omissions" referenced in U.S.S.G. § 1B1.3(a)(1) can form the basis for the cited cross references, those acts and omissions necessarily incorporate mens rea. Accordingly, when Burns denied that his "acts and omissions" included shooting with the intent to kill, he denied relevant conduct attributable to him.[5]  Because falsely denying relevant conduct is "inconsistent with acceptance of responsibility,"

---

[5] Indeed, in a different context, this court has held that the term "conduct" in the Guidelines encompasses mens rea. On that basis, we affirmed the denial of an acceptance-of-responsibility reduction when a defendant disputed a mens rea element of the offense of conviction while admitting to the physical act. <u>See, e.g.</u>, <u>United States v. Castner</u>, 50 F.3d 1267, 1279–80 (4th Cir. 1995) ("Intent is an essential element of major fraud against the United States . . . . Thus, the district court did not err in refusing to adjust downward when [the defendant], by denying his intent to defraud, did not completely accept responsibility for all of his criminal conduct.").

12

U.S.S.G. § 3E1.1 cmt. n.1(A), the district court did not err by denying Burns a three-level reduction.  Accord United States v. Pauley, 289 F.3d 254, 261 (4th Cir.), modified on reh'g on other grounds, 304 F.3d 335 (4th Cir. 2002) (noting that the defendant "failed to demonstrate his entitlement to a reduction for acceptance of responsibility" because, among other reasons, "he continue[d] to deny his culpability for the execution-style double murder of [two people by] asserting that the death of [one victim] was the result of an accidental firing").

IV.

Accordingly, for the foregoing reasons, the judgment of district court is

AFFIRMED.

13